Craig D. Glover, pro se
4546 Stradford Pl.
San Antonio, TX 78217-1376
glovercraig95@gmail.com

**FILED**

NOV 1 6 2020

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### 655 E César E. Chávez Blvd.
### San Antonio, TX 78206

| | | |
|---|---|---|
| **CRAIG D. GLOVER,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | |
| **LOUIS DeJOY,** | | **SA20CA1337 XR** |
| **U.S. POSTAL SERVICE,** | : | |
| | : | |
| | | **Bench Decision Requested** |
| **Defendant.** | : | |

:

### COMPLAINT

PRELIMINARY STATEMENT

This is an employment-related action for violations of the Plaintiff's civil rights

and other rights granted under the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e et seq. ("Title VII"). Plaintiff was discriminated and retaliated against based on his

race, color, sex, and his prior protected EEO activities when he was denied overtime

1

opportunities, suspended for 14-days, and was otherwise harmed in terms and conditions
of his employment by the Defendant, US Postal Service.

JURISDICTION AND VENUE

- This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, Civil Rights Act of
1964, Title VII.

- The unlawful employment practices alleged below were committed and/or
executed by supervisory personnel of the US Postal Service ("the employer"). The
claims arise from events that took place between 2016 and 2020 in the facility located in
San Antonio, Texas. Accordingly, venue lies in the United States District Court for the
Western District of Texas.

PARTIES

- The pro se Plaintiff, Craig D. Glover, is an adult individual who has a mailing
address of 4546 Stradford Pl., San Antonio, TX 78217-1376. His email is: glovercraig95
@gmail.com.

- The Defendant, Louis DeJoy, is U.S. Postmaster General at U.S. Postal Service
  with the Headquarter at 475 L'Enfant Plaza, SW, Washington DC, 20260-0004.

- At all relevant time, Timothy Whelihan was Senior Manageer of Distribution
Operations at PO Box 225428 Dallas, TX 75222.

- At all relevant time, Ayda I. Alderete was Manager of Post Office Operations
at 1 Post Office Drive, San Antonio, TX, 28284-8401.

- At all relevant time, Kimberly Calderon was Senior Manager of Distribution

2

Operations at San Antonio P & DC at 10410 Perrin Beitel Rd., San Antonio, TX 78284-9997.

- At all relevant time, Timothy Keeton was Plant Manager at the above referenced facility.

- At all relevant time, Michael Bana was Supervisor of Distribution Operations at the above referenced facility.

- At all relevant time, Lisa Costantino was Manager of Distribution Operations at the above referenced facility.

- At all relevant time, Fonda Belardo was Supervisor of Distribution Operations at the above referenced facility.

- The US Postal Service engages in commerce for the purposes of Rehabilitation Act, Title VII, and FMLA and qualifies as an employer within the meaning of the statute and regulations at issue in this case.

## STATEMENT OF FACTS

11.  The pro se Plaintiff, Craig D. Glover, is an African-American with Black color of skin.

13. Since October 26, 1985 Plaintiff has been employed by US Postal Service.

14. At all relevant time Plaintiff was employed by US Postal Service, San Antonio, TX, as a General Expeditor, PS Level 7 employee.

15. As of July 2016 there were approximately 20 employees working on Tour 1. Of the 20, Complainant was the only Expeditor on Tour I.  There was one Work Lead Mail Processing Clerk on Tour I: David Hernandez (Hispanic).   There are 4 other

3

General Expeditors/Lead mail Clerk in other Tours.  They are all White.

- Mail Processing Clerk (or Mail Processor) sorts and processes the mail through the machine.

- Lead Mail Processing Clerk (or Mail Clerk), P7-07, assists and fills in for the supervisor's absence.  Otherwise he or she works like a Mail Processor.

- General Expeditors, PS-07, require knowledge of the sort plan tailored to each city or town and need to convey that knowledge to the Mail Processors.  They also supply a label for each tray (24x7 inches), which is then place on the rack once it is filled with mail.  They also communicate with the truck drivers headed to the postal stations to deliver the mail.

- As of July 2016, the regular work hours for Tour 1 started at 8:00 PM and ended at 4:30 AM; Tour 2 began at 6:00 AM; and Tour 3 began at 3:00PM.

*Plaintiff's Prior Protected Activities*

- On September 10, 2016 Plaintiff initiated the EEO contact and filed an informal complaint of discrimination based on his race and color regarding the start time change.

- On December 20, 2016 Plaintiff filed a formal complaint of discrimination and identified the following individuals as the responsible management officials: Timothy Whelihan and Aida Alderete.

- On January 28, 2019 Plaintiff filed another formal EEO complaint and

4

identified the following individuals as the responsible management officials: Kimberly Calderon and Timothy Keeton

• On September 25, 2019 Plaintiff filed another formal EEO complaint and identified the following individuals as the responsible management officials: Kimberly Calderon, Michael Bana, Janet Hannah, Lisa Constantino, and Fonda Belardo.

• On July 30, 2020 Plaintiff filed a formal discrimination complaint and identified Thomas Castro, Supervisor of Mail Distribution, and Jack Lapp, Manager of Mail Distribution, as the responsible management officials.


*Particulars of Allegations*

**The Plaintiff alleges that based on his race (African-American), color (Black), sex (Male), and based on his prior protected EEO activities, he was discriminated and retaliated against when:**

• On July 11, 2016 Timothy Whelihan, Senior Manager of Distribution Operation,

   issued a letter informing Plaintiff of "Change in Reporting Time" from 8:00 PM (20:00) to 9:30 PM (21:30).

   • As of July 2016, the regular work hours for Tour 1 started at 8:00 PM and ended at 4:30 AM.
   • Starting from July 23, 2016 Complainant was required to start at 9:30 PM and to end his regular shift at 6:00 AM.
   • As of July 2016 Tour 2 began at 6:00 AM; and Tour 3 began at 3:00PM. Ex A; undisputed.
   • On August 5, 2016 Plaintiff became aware that the others similarly situated were not issued such a notice of change of their respective time.
   • On September 10, 2016 Plaintiff initiated the EEO contact to complaint of discrimination regarding the change of start time.
   • Starting from July 23, 2016 when Plaintiff's start time was changed from 20:00 (8:00 PM) to 21:30 (9:30 PM), his regular shift ended at 6:00 AM.

5

- Others in the same shift, Tour 1, ended their regular shift at 4:30 AM and began their overtime starting at 4:30 AM.
- By the time Plaintiff ended his Tour I at 6:00 AM, most of the dispatch work was done, effectively preventing Plaintiff from performing overtime work.

- On August 12, 2016, Complainant was informed that he was not brought in on his scheduled day off (SDO) for the overtime work.

  - Other employees with less seniority than him were brought in on Plaintiff's SDO (even though he was available to work overtime).
  - Other employees who did not put their names on the overtime desired list were allowed to do overtime on Plaintiff's days off (even though he was available to work overtime).
  - Naomi Cortez, Mail Processing Clerk, had the same Scheduled Day Off as Plaintiff: Friday Night into Saturday and Saturday night into Sunday.
  - Cortez was brought in on Friday nights to work overtime until Saturday mornings, while Complainant was denied the overtime during the same Scheduled Day Off.  This happened at least for 2 weekends.  She worked Mail Processor or Expeditor work during such overtime hours.
  - Naomi Cortes was Mail Processor.   However, she performed mail processing work during her overtime and her regular time.
  - Complainant, too, performed the mail processing work, as he did during his overtime and regular time.  When he did not do mail processing, he did Expeditor's work.

- Since July 23, 2016 to August 5, 2016 the scheduled day off (SDO) overtime list was not rotated, resulting in the denial of overtime opportunities for Plaintiff.

  - The non-career employees without regular work schedule, such as Postal Support Employees (PSE's) were allowed to do overtime on Plaintiff's scheduled day-off even though he was available to work overtime in violation of the union contract.
  - Moreover, PSE's were allowed to stay for overtime during Plaintiff's regular service days, as he was finishing up his regular tour of duty (after his start time was changed 1.5 hour later to begin at 9:30 PM) in the same Tour 1.
  - PSE's were allowed to work over 12 hours in a day (including overtimes), while Plaintiff's overtime opportunities were denied.  So, somedays Plaintiff ended up finishing his regular work when PSE's have already started their overtime work.

6

- Shortly after July 23, 2016 and until April 2017 or later, Plaintiff was totally denied overtime to do before and after his Tour I. However, he was allowed to do overtime during his scheduled day off.
- Toward the end of 2017 some employees left employment and newly hired workers began employment.
- Between the end of 2017 and throughout 2018 Plaintiff was allowed to do his overtime on his regular days as well as on his scheduled days off, as the new employees did not perform overtime.
- Complainant was off for 105 days, starting from when he was placed on the Emergency Placement on Feb. 1, 2019.
- Once he returned from the involuntary leave on May 4, 2019, his overtime was taken away again.
- On his overtime hours, Plaintiff was only allow to do the mail processor work, as he was told to "get on the [mail processing] machine" by Janet Hannel, his first level supervisor. He was not allowed to do the Expeditor's work during most of his overtime hours; while other PS Level 7 workers, including some PSE's, were allowed to do Expeditor's work as well as Lead Mail Clerk work during overtime. Ex A.
- The stated reason for change in the Complainant's reporting time, effective July 23, 2016, was "[D]ue to staffing realignment to improve efficiencies." However, in their affidavits no management official mentioned "realignment" as the stated reason for changing Complainant's reporting time.
- In fact, Complainant's first level supervisor, Janet M. Hannah, indicated that she did not know the reason why Complainant's reporting time was changed.
- Contrary to Ayda Alderete's affidavit statement, which was in turn contradicted by Lisa Costantino's; no one else's reporting time was changed.
- Complainant was the only Expeditor on Tour 1.
- There were 4 other Expeditors/Lead Mail Clerk in other Tours. They were all White.
- Complainant was the only black Expeditor, whose reporting hours were changed (despite the fact that he was the only Expeditor on Tour 1), resulting in decrease of his overtime work.

- On September 9, 2018 Plaintiff's job was reposted for bidding.

- In July 2018 Plaintiff was threatened with a disciplinary action.

- In October 2018 Plaintiff was not allowed to work 12 hours in a day or 7 days a

7

week, like other similarly situated employees.

- On July 24, 2018 Plaintiff was ordered to perform the Lead Clerk job.

- On May 1, 2019 Plaintiff was issued a 14-day suspension.

- On May 4, 2019 Plaintiff received a Report to Work letter.

- On may 7, 2019 and May 8, 2019 Plaintiff was given an Investigative Interview.

- Beginning on or about May 17, 2019 and ongoing Plaintiff was assigned the most
physically demanding labor assignments.

- On May 19, 2019 Plaintiff was required to complete his co-workers' assignment.

- On May 18, 2019 Plaintiff was not allowed to report to work early, as other
  similarly situated employees were.

- On May 20, 2019 Plaintiff was denied the overtime break and wash-up time.

- Beginning in May of 2019 and ongoing, Plaintiff was once again not afforded the
same overtime opportunities as your co-workers (as resulting from the late beginning of
Tour and late ending of Tour).

- In May 2019 Plaintiff was not allowed to not take lunch, as other similarly
situated employees were.

- In April or May 2019 Plaintiff was changed with Absence Without Leave
  (AWOL).

- On March 13, 2020 Management walked Plaintiff off the floor for no reason
  without pay.

- March 19, 2020 Management made Plaintiff perform mail processing duties, which was not part of his job.

*Other Similarly Situated Individuals*

- Complainant was not allowed to do Expeditor's work but told to do Mail Processor's work during most of his overtimes. Others, in contrast, who were not Expeditors were allowed to do Expeditor's work during their respective overtime. Most of Level 7 workers, including some PSE's, were allowed to perform overtime work Plaintiff could have performed but was denied.

- Most of other Level 7 workers, including some PSE's, who were allowed to work overtime during Scheduled Days and Scheduled Days Off on Tour I were either Hispanic or White.

- The following PSE's referenced above on Tour I in 2016 were Hispanic with lighter color of skin: Monica Sanchez, Brandon Flores, Jessica Gonzales, German Martinez, Alberto Martinez, Margaret Gonzales, Marco Loredo, Rebb Tupas, Joanna Gonzales, Janie Torres, Marculas Defrance, Jorge Morales Jr., Domingo Gomez, Joshua Trinidad, David Longoria, Norma Navarrete, Rosa Catorena, Encarnacion Munoz, Dominik Lobo, Luis Cespedes Jr.

- The following PSE's referenced above on Tour I in 2016 were White or non black with unknown race, except one as indicated: Jabber Mohammed Abdul, Connor Baum, Michael Armstrong Jr., Kyle Restuccio, Pamela McFadden, John Washington (Black), Lisa Rhodes, Anthony Hancock, Stephanie Jaimes-Sesmas, Legita Ruffin.

9

- The following employees were not on the desired overtime list in July 2016 but were allowed to work overtime on Plaintiff's scheduled day off (even though he was available to do overtime: John Barnett (White) and Fernando Castillo (White Hispanic).

- The followings were PS Level 7 Hispanic employees: Pamela Candesso, Rosalio Camacho (General expeditor), Geraldo Arreola, Ruben Martinez, David Hernandez, Fernando Castillo (Lead Mail Processor as of March 2017).

- The following employees were Level 7 Hispanic employees, except one as indicated: Pamela Cano-Desso (General Expeditor), Rosalio Camacho, Geraldo Arreola, Ruben Martinez, David Hernandez, Fernando Castillo, and Mark Clark (White Expeditor on Tour II who became Lead Mail Clerk in late 2016).

- After doing 60 hours total in regular and overtime per week, employees can decline further works hours, regular or overtime.

- Employees on Tour I were allowed to start their week by working 12 overtime hours on the Scheduled Day Off and begin their regular work week.  They were allowed to work 3 days of regular time (a total of 24-26 hours) into the week and 2 to 4 hours of overtime during each of those scheduled work days they worked.  This kind of schedule allowed them to decline work (overtime or not) for the two other scheduled regular work days; because you are allowed to decline work (overtime or not) after 60 hours of work (overtime or not) in a week.  This resulted in their working 4 days and getting 6 days of pay in total wages.

- For this reason, they ended up working less overtime than Complainant did but having two regular days off and the third regular day partially off.

10

- About 5 or 6 people on Tour III walked out after 4 hours into some of their regular days.  Because they started at 3 PM (the regular Tour III start time) and left at 5-6 AM; while Complainant started at 9:30 PM (after July 23, 2016 order to change the reporting time) and ended his regular tour at 6:00 AM, at which time no work was available for any dispatch overtime work, every though there were still primary mail (893, 894, 263, etc.) to do on his overtime, on which he was not allowed to work overtime.

- Even though his overtime hours decreased, due to the change of his reporting time, Plaintiff ended up doing more overtime than others; because others declined their overtime (after having worked a total of 60 hours a week, including 20 or more hours of overtime) and was allowed to skip part or whole of their regular work days.

- Plaintiff could not do the same because by the end of his Tour I, 6 AM (effective starting July 23, 2016), the dispatch work was all done (unless the dispatch trucks were late) and he was not allowed to do primary mail in his overtime during his scheduled work days.

- The management, in their affidavits, admitted that Complainant's overtime was curtailed as result of the reporting time change.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

*Agency Case Number 1G-781-0081-16*

- On September 10, 2016 Plaintiff initiated the EEO contact and filed an informal complaint of discrimination based on his race and color regarding the start time change.  More specifically, Plaintiff alleged:

> On August 12, 2016 I was informed that Management has been in violation of APWU/USPS Contract: (1) Management have allowed PSE['s

11

(Postal Support Employees)] to work overtime in a service day, but not me when I was available before and after [my] tour. (2) Management has allowed PSE['s] to work overtime in my scheduled days-off when I was available…. I am on the voluntary overtime desired list… (3) Management has allowed non-desired overtime employee[s] to work overtime but not me. (4) Management has not rotated schedule day-off overtime allowing the same employees to report on overtime.

- On September 20, 2016 Plaintiff initiated another EEO contact and file an informal complaint of discrimination regarding the management's failure to rotate "the schedule day-off overtime" list.

- On December 20, 2016 Plaintiff filed a formal complaint of discrimination.

- On January 30, 2017 Defendant accepted the following claims for investigation with the docket number 1G-781-0081-16:

  - On or about August 5, 2016 your begin tour was changed.

  - On August 12, 2016 you became aware that management was not rotating the all-day overtime.

- On September 1, 2020 Defendant issued the Final Agency Decision on the above matter: 1G-781-0081-16.

*Agency Case Number 1G-781-0078-18*

- On January 28, 2019 Plaintiff filed a formal EEO complaint.

- On March 22, 2019 Defendant accepted the following amended claims for investigation:

  - On September 9, 2018 your job was reposted for bid.

  - On a date to be specified you were issued discipline.

12

- On dates to be specified you are not allowed to work 12 hours in a day or 7 days a week like others.

- On July 24, 2018 you were ordered to perform the Lead Clerk job.

- On September 1, 2020 Defendant issued the Final Agency Decision on the above matter: 1G-781-0078-18.

*Agency Case Number 1G-781-0081-19*

- On September 25, 2019 Plaintiff filed another formal EEO complaint.

- On October 28, 2019 Defendant accepted the following claims for investigation:

  - On May 1, 2019 you were issued a 14-day suspension.

  - On May 4, 2019 you received a Report to Work letter.

  - On may 7, 2019 and May 8, 2019 you were given an Investigative Interview.

  - Beginning on or about May 17, 2019 and ongoing you were assigned the most physical[ly demanding] labor assignments.

  - On May 19, 2019 you were required to complete your co-workers assignment.

  - On May 18, 2019 you were not allowed to report to work early.

  - On May 20, 2019 you were denied the overtime break and wash-up time.

  - Beginning in May of 2019 and ongoing, you were not afforded the same overtime opportunities as your co-workers (related to the beginning of

Tour and ending of Tour).

- On May 10, 2019 and September 19, 2019 management made inappropriate negative comments about your performance to the union.
- On unspecified date(s) you were not allowed to not take lunch like your co-workers.
- On unspecified date(s) you were changed Absence Without Leave (AWOL).
- On unspecified date(s) management made false statements about you and accused you of having a threatening behavior.

- On October 29, 2020 Plaintiff withdrew his EEOC hearing request in order to have the Final Agency Decision issued on this matter.

*Agency Case Number 1G-781-0047-20*

- On April 23, 2020 Plaintiff initiated the EEO contact and filed a complaint of discrimination (1G-781-0047-20) based on his race, color, sex (Male), and his prior EEO activities regarding the incident in March 13, 2020 when "Management walked him off the floor for no reason without pay and on March 19, 2020 Management made him perform mail processing duties which [was] not part of his job."

- On July 30, 2020 Plaintiff filed a formal discrimination complaint.
- On August 17, 2020 Defendant issued the Final Agency Decision, dismissing the claim (1G-781-0047-20) for failure to state a claim.

<u>REMEDIES and RELIEF</u>

- Plaintiff seek appropriate remedies, pecuniary and non-pecuniary, including but not limited to restoration of all lost wages and benefits; and compensatory damages for the deterioration of mental and physical health secondary to the employment discrimination and retaliation.

<u>NO JURY DEMAND</u>

- The Plaintiff herein hereby a bench decision on all issues in this action.

WHEREFORE, the Plaintiff respectfully requests that the Court enter judgment in his favor and against the Defendant.

Respectfully Submitted,

[signed]
Craig D. Glover, pro se
4546 Stradford Pl.
San Antonio, TX  78217-1376
glovercraig95@gmail.com

Date:   November 16, 2020

15

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the above was served on the entity identified below on the date of the signature below by means indicated below:

| | |
|---|---|
| US DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS 655 E César E. Chávez Blvd. San Antonio, TX  78206<br><br>Via Hand Delivery | Attorney General William P. Barr U.S. Department of Justice 950 Pennsylvania Avenue, NW Washington, DC 20530-0001<br><br>Via Certified Mail Return Receipt. |
| Louis DeJoy, U.S. Postmaster General U.S. Postal Service 475 L'Enfant Plaza, SW Washington, DC  20260-0004<br><br>Via Certified Mail Return Receipt. | Gregg N. Sofer, U.S. Attorney US. Attorney's Office 601 NW Loop 410, Suite 600 San Antonio, Texas  78216<br><br>Via Certified Mail Return Receipt. |

Date:   November 16, 2020

[signed] *G. G.*
Craig D. Glover, pro se
4546 Stradford Pl.
San Antonio, TX  78217-1376
glovercraig95@gmail.com

16